(No. 19664.—

THE PEOPLE *ex rel.* John J. Reilly, Appellant, *vs.* THE CITY OF CHICAGO *et al.* Appellees.

*Opinion filed October 19, 1929—Rehearing denied Dec. 10, 1929.*

SAMUEL KART, (WALTER H. SHURTLEFF, of counsel,) for appellant.

SAMUEL A. ETTELSON, Corporation Counsel, and FRANCIS J. VURPILLAT, for appellees.

Mr. JUSTICE STONE delivered the opinion of the court:

Appellant filed in the circuit court of Cook county a petition for writ of *mandamus* to compel the Civil Service Commission of Chicago to re-instate him to the employment he formerly had in the department of gas and electricity as a laborer in that department, or, in case such order be not entered, that the commission be required to prefer written charges against him and allow him to be heard thereon in accordance with the Civil Service act relating to cities and the rules of the Civil Service Commission of the city of Chicago made pursuant thereto. After alleging the passage of the Civil Service act, its adoption by the city of Chicago and setting out various rules and classifications of service in the government of the city of Chicago promulgated by the Civil Service Commission, the petition avers that the petitioner had passed the examinations and tests, both physical and mental, which were held by the commission for the position and place of employment as an electric light laborer in the gas and electric department of said city and was duly registered on the list of eligibles for that appointment; that he was called and

put to work on June 24, 1925, as an electric light laborer, and that he continued in that capacity until he was wrongfully discharged from that position on July 25, 1927. The petition alleges that after his discharge petitioner appeared before the Civil Service Commission and demanded that he be re-instated to his position as laborer, which the defendants, acting as a commission for the city, refused to do. It is also alleged that the petitioner thereupon demanded that charges be preferred against him in writing and that he be given an opportunity to defend against such charges, as provided in section 12 of the Civil Service act, but that the defendants, constituting the Civil Service Commission, refused to prefer charges against him for the reason that the provisions of section 12 did not apply to laborers, and petitioner could be discharged without charges preferred against him or giving him an opportunity to defend himself against such discharge, and that this could be done at any time. It is alleged that the provision of section 12 which excludes laborers from the provisions of the act with reference to discharge of those employed under the Civil Service act is invalid, as in violation of the constitutional right of the petitioner to his property and liberty, contrary to section 2, article 2, of the constitution; that said section arbitrarily selects laborers under civil service of cities as a class and subjects them to special burdens from which other persons or classes of persons similarly situated are exempt; that it arbitrarily discriminates against laborers; that petitioner is denied equal protection of the laws, and that such provision of section 12 is in the nature of special legislation. The defendants, appellees here, demurred to the petition. The demurrer was sustained and the petition dismissed.

The argument of appellant here is, that the provision of section 12 of the Civil Service act, in so far as it excludes laborers therefrom, is unconstitutional on the grounds enumerated. Section 12 provides as follows:

"No officer or employee in the classified civil service of any city who shall have been appointed under the said rules and after said examination, shall be removed or discharged except for cause, upon written charges and after an opportunity to be heard in his own defense. Such charges shall be investigated by or before said Civil Service Commission, or by or before some officer or board appointed by said commission, to conduct such investigation. The finding and decision of such commission or investigating officer or board, when approved by said commission, shall be certified to the appointing officer, and shall be forthwith enforced by such officer. Nothing in this act shall limit the power of any officer to suspend a subordinate for a reasonable period, not exceeding thirty days. In the course of an investigation of charges each member of the commission, and of any board so appointed by it, and any officer so appointed shall have the power to administer oaths and shall have power to secure by its subpœna both the attendance and testimony of witnesses, and the production of books and papers relevant to such investigation. Nothing in this section shall be construed to require such charges or investigation in cases of laborers or persons having the custody of public money, for the safekeeping of which another person has given bond."

Appellant's first contention is, that the provision of section 12 excluding laborers from the methods of discharge there prescribed deprives him of his property, contrary to section 2 of article 2 of the State constitution and the due process clause of the Federal constitution. Appellees, on the other hand, argue that the right to hold a place of employment under civil service is not a property right, and that appellant's right to contract with the city for labor has not been denied him but that appellant entered into the contract upon the terms and conditions of the Civil Service act, which permits his discharge without charges being preferred against him.

Labor has been held to be property. (*Ritchie* v. *People*, 155 Ill. 98.) It does not follow, however, that appellant has a property right in the position which he has occupied as electric light laborer. One has no property right in an unearned salary. (*Hughes* v. *Traeger*, 264 Ill. 612.) Positions or places held under the Civil Service act are in the nature of offices, and the salary created by the act is not property. The right of compensation grows out of the rendition of services and not out of any contractual relation. (*Gathemann* v. *City of Chicago*, 263 Ill. 292; *People* v. *City of Chicago*, 242 id. 561; *People* v. *Loeffler*, 175 id. 585; *People* v. *Kipley*, 171 id. 44.) Appellant has not been deprived of the right to sell his labor and to receive compensation therefor. Having no property right in the particular position he occupied, it follows that the due process clauses of the State and Federal constitutions are not violated. The Civil Service act, and rules passed by the commission pursuant thereto, are not open to this objection.

It is next argued that the act discriminates against laborers as a class, for the reason that there is no substantial difference between laborers and others employed under the Civil Service act. The petition alleges that the appellant took the examinations, both physical and mental, required of all laborers; that he became a part of the classified service just as any other officer or employee is classified under the civil service, and that the act discriminates against him so far as the power of discharge is concerned, without any reasonable ground of difference or distinction. It may not be doubted that a law applicable only to one class of individuals must rest upon some actual, substantial difference between that class and other individuals of the State or community when considered with reference to the purposes of the legislation. It is necessary that there be a basis in reason and principle for regarding such class of individuals as a distinctive or separate class. The fact that

the act discriminates against an individual or group is not of itself sufficient to render it invalid. Such discrimination, to violate constitutional guaranties, must be unreasonable and wanting in that basis required by law. A class may not be created by the arbitrary declaration of an act of the legislature and endowed with special legislative favors or subjected to special burdens. The classification, in such instance, must be based on a substantial and reasonable distinction in the situation and circumstances of the individuals who are embraced therein from those not so included, and the ground of such classification and distinction must have relation in reason and in principle to the privileges or burdens proposed to be granted to or laid upon such individuals as a class by the proposed legislation. (*Berry* v. *City of Chicago,* 320 Ill. 536; *Bagdonas* v. *Liberty Land and Investment Co.* 309 id. 103.) An act which arbitrarily discriminates against one class in the transaction of a lawful business or occupation and leaves unaffected others engaged in a manner not distinguishable in character from that in which the class discriminated against is employed is in contravention of constitutional guaranties. (*Bailey* v. *People,* 190 Ill. 28.) The question then arises here, "Is there any reasonable basis for this discrimination against laborers as distinguished from others under the Civil Service act?" In *People* v. *Brady,* 262 Ill. 578, it was held that provisions of section 10 of the State Civil Service act, practically identical with the act here considered, which gave to those who had engaged in military or naval service in the Civil War preference in the appointment to civil service positions, was not open to the objection that it was an unreasonable discrimination against others who had taken the civil service examinations, for the reason that such discrimination was based on a reasonable distinction drawn between the soldier and the civilian, and it was also pointed out that recognition of and privilege accorded to a veteran soldier or sailor who had ren-

dered service in war tended to encourage and promote patriotism.

Section 10 of the Civil Service act relating to cities (Cahill's Stat. 1929, p. 457,) provides as follows: "The head of the department or office in which a position classified under this act is to be filled shall notify said commission of that fact, and said commission shall certify to the appointing officer the name and address of the candidate standing highest upon the register for the class or grade to which said position belongs, except that, in cases of laborers where a choice by competition is impracticable, said commission may provide by its rules that the selections shall be made by lot from among those candidates proved fit by examination." By this provision it will be seen that the examination for laborers relates to a test to determine their physical and mental fitness and their experience in the work sought by them. There is no competition in such an examination, and it bears no similarity to the educational requirements and examinations to which other classes under civil service are subjected. Section 1 of rule 10 of the Civil Service Commission, adopted in pursuance of section 10 of the Civil Service act, provides that the chief examiner, under the direction of the commission, shall maintain under class U, which is by that section characterized as "Noncompetitive labor service," a standing notice of examination for such service, and that the examination for laborers shall consist of mental or physical tests to prove the fitness of the applicants for the work in the place they seek to fill, and that oral tests may also be made a part of said examination to prove fitness and character. By section 3 of rule 10 it is provided that such applicants, when accepted, shall be deemed eligible for the kind and character of labor for which they have been examined and shall be selected by lot, individually or in numbers, and certified whenever there are places to be filled.

While the petition alleges that the examination and classification of appellant was competitive, it is evident from the statute and the rules of the commission that such examination and classification are not competitive. The allegation that they are is one of law, which appellees' demurrer did not admit. It will be observed from these provisions that laborers as a class are not similarly situated with reference to their employment under the Civil Service act, as are others in civil service employment. In the latter case the applicant is certified only when he stands within the prescribed number of those ranking highest in such examinations, while all laborers accepted stand on an equal footing and are assigned to work by lot. The fact that one may be designated as an electric light laborer, or a sewer laborer, or a sidewalk laborer, does not render his services other than that of a common laborer as distinguished from skilled or educated service. In a sense all service is labor. The meaning of the word "laborer" has been often defined with reference to the enforcement of mechanics' liens and similar actions. In *People* v. *Board of Trustees,* 283 Ill. 494, the question arose whether a carpenter came within the classification as laborer referred to in sections 10 and 12 of the Civil Service act. It was held that the legislature had in mind the general meaning and significance of the word "laborer" when it inserted that word in section 12 of the statute, and used it as meaning an ordinary laborer and day workman as distinguished from a skilled artisan. It was held that a carpenter is generally understood to be a skilled artisan rather than a day laborer, and was not, therefore, within the meaning of the word "laborer" as used in the act. In discussing civil service laws, Dillon (vol. 1, 5th ed. sec. 405,) has said: "In contradistinction to the heads of departments, ordinary laborers or day workmen are not required to pass competitive examinations. Similarly, statutes which prohibit the discharge of persons holding positions by appointment in the

municipal service except for cause and after notice and a hearing, or otherwise restrict the power of removal, are by their terms usually construed to have no applicability or operation upon laborers or day workmen." In *Gathemann* v. *City of Chicago, supra,* it was held that the language, "employees performing manual labor," could not be understood to include a foreman. In *May* v. *City of Chicago,* 222 Ill. 595, it was held that it was not the intent of the Civil Service act to place clerks and ordinary laborers upon the same footing as to employment and discharge. We are of the opinion that this provision of section 12 finds basis in a substantial distinction between a laborer and others included under the Civil Service act, which distinction bears a reasonable relation to the purposes of the legislation, and that the difference in manner of discharging appellant there provided does not render the act invalid. *People* v. *Brady, supra; People* v. *Coffin,* 282 Ill. 599; *People* v. *Loeffler, supra; People* v. *Waring,* 149 N. Y. 621; Black on Const. Law, pp. 574, 575.

Nor can this act be said to be special legislation, in contravention of section 22 of article 4 of the constitution, since it applies to all persons classified by the civil service of the city of Chicago as laborers and is operative only after its adoption by a vote of the people. *People* v. *Kipley, supra.*

Counsel argue earnestly that this law is bad in principle. It would not be proper for this court to comment upon the advisability of a statute. That is a matter with which this court has nothing to do but which rests wholly with the legislature. The act is not open to the constitutional objections urged.

The circuit court did not err in sustaining the demurrer and dismissing the petition, and its judgment will be affirmed.            *Judgment affirmed.*