(No. 40623.—

JAMES E. TREECE, Admr., *vs.* SHAWNEE COMMUNITY UNIT SCHOOL DISTRICT No. 84 *et al.*—(SHAWNEE COMMUNITY UNIT SCHOOL DISTRICT No. 84, Appellant, *vs.* EDMOND GEORGE BRIDEWELL, Appellee.)

*Opinion filed January 19, 1968.*

BILL F. GREEN and FEIRICH & FEIRICH, both of Carbondale, for appellant.

J. C. MITCHELL and WILLIAM A. ARMSTRONG, both of Marion, for appellee.

Mr. JUSTICE WARD delivered the opinion of the court:

The plaintiff, James E. Treece, the administrator of the estate of his deceased son, James, charged in the first count of his amended complaint for wrongful death that on January 27, 1966, his intestate, James Douglas Treece, was a student attending physical education class on premises of the defendant school district used as a high school in Union County, Illinois. The count set forth that the class was instructed, conducted and supervised by an employee or employees of the district and that during such class James was caused or permitted to participate in a certain tumbling stunt which involved rolling over a pyramid-like formation of other students and in doing this James received injuries

from which he died on February 9, 1966. It was claimed that these fatal injuries were the result of the defendant school district's negligence in failing to have such physical education class in which James was participating carefully conducted or in permitting James to participate in class activities without proper instruction or supervision. Count III of the complaint charged the defendant, George Bridewell, a physical education instructor employed by the defendant school district, with substantially the same conduct and alleged that this constituted negligence on his part which resulted in the death of the plaintiff's intestate. In the second and fourth counts the plaintiff set forth personal claims, as the father of the deceased James, for hospital, medical, ambulance and funeral expenses incurred.

Subsequently, the defendant school district filed a motion asking leave to file a third-party counterclaim, against the defendant Bridewell. It was contended by the school district that if it was found liable to the plaintiff, it would be so only because of its employer-employee relationship with Bridewell and through the doctrine of *respondeat superior*. After hearing argument, the court denied the defendant school district's motion for leave to file against the defendant Bridewell. The court concluded that since Bridewell was entitled to be indemnified under section 10—21.6 of the School Code (Ill. Rev. Stat. 1965, chap. 122, par. 10—21.6) for any financial loss incurred for acts of negligence committed by him in the scope of his employment, the school district could not maintain an action against Bridewell for any damages which it might sustain because of the employer-employee relationship described. The defendant school district has appealed directly to this court, alleging that the constitutionality of section 10—21.6 of the School Code is involved.

We can entertain appeals only from final judgments (Ill. Const., art. VI, sec. 5; see also Supreme Court Rule 302) and must determine if we have a judgment here that

will support an appeal to this court. We said in *Village of Niles* v. *Szczesny,* 13 Ill.2d 45, at page 48: "While the order need not dispose of all the issues presented by the pleadings, it must be final in the sense that it disposes of the rights of the parties, either upon the entire controversy or upon some definite and separate part thereof." Here, the trial court in denying the defendant school district's motion for leave to file a counterclaim finally determined that the school district did not have a right to recover against the defendant Bridewell in the event the school district would be found liable on the basis of Bridewell's negligence within the scope of his employment. This is a final order, but it is not appealable here unless we have in addition an express written finding by the trial court that there is no just reason for delaying the appeal. This is because the trial court's judgment was only as to the defendant school district and Bridewell and was to fewer than all parties and issues involved in an action with multiple parties or multiple claims. (See *Ariola* v. *Nigro,* 13 Ill.2d 200, and Supreme Court Rule 304.) The order of the trial court is not without ambiguity, as it makes reference to Rule 307, which is concerned with the appeal of interlocutory orders to the appellate court, but it does appear that the court's dominant intention was to make its ruling denying the school district's motion to file a counterclaim appealable as a final judgment. This is evidenced by the trial court's having entered a finding pursuant to section 50(2) of the Civil Practice Act (Ill. Rev. Stat. 1965, chap. 110, par. 50(2), now Supreme Court Rule 304) that there was no just reason for delaying an appeal and such section applies only to final judgments. Accordingly, we have taken jurisdiction of this appeal involving a substantial constitutional question.

The school district asserts that section 10—21.6 of the School Code violates section 22 of article IV of the Illinois Constitution because it grants "a special or exclusive priv-

ilege" to employees of a school district having a population of less than 500,000; that it contravenes section 23 of article IV of the constitution since it releases the indebtedness, liability or obligation of an individual employee to a school district; and also it violates section 20 of article IV, by requiring a school district with a population of less than 500,000 to pay a judgment recovered against one of its employees in excess of $10,000 (which is a school district's statutory limit of financial responsibility in each separate cause of action in which it may be found liable (Ill. Rev. Stat. 1967, chap. 122, par. 825),) it would be making the State responsible for and paying the debt or liability of an individual.

Section 10—21.6, provides that a school board has the duty: "To indemnify and protect school districts, members of boards of education, employees, and student teachers against death and bodily injury and property damage claims and suits, including defense thereof, when damages are sought for negligent or wrongful acts alleged to have been committed in the scope of employment or under the direction of the board of education. No agent may be afforded indemnification or protection unless he is a member of a board of education, an employee of a board of education or a student teacher."

Prior to its being amended in 1965, section 10—21.6 was worded exactly as section 34—18.1 of the School Code, which specifically applies to school districts with a population of over 500,000. Section 34—18.1 provides: "The board of education shall insure any member of the board or any agent, employee, teacher, officer or member of the supervisory staff of the school district against financial loss and expense, including reasonable legal fees and costs arising out of any claim, demand, suit, or judgment by reason of alleged negligence or alleged wrongful act resulting in death or bodily injury to any person or accidental damage to or destruction of property, within or without the school

premises, provided such board member, agent, employee, teacher, officer or member of the supervisory staff, at the time of the occurrence resulting in such death, bodily injury, or damage to or destruction of property was acting under the direction of the board within the course or scope of his duties." Ill. Rev. Stat. 1965, chap. 122, par. 34—18.1.

While all school districts are specifically given the authority to insure their employees against financial loss (Ill. Rev. Stat. 1965, chap. 122, par. 34—18(12); Ill. Rev. Stat. 1965, chap. 122, par. 10—22.3), in 1965 section 10—21.6 was revised so that it no longer imposes a duty on a board to insure school officers, agents, and employees against financial loss but does impose a duty to indemnify them. Section 34—18.1 retained the duty to insure in a school district with a population of over 500,000.

We reject the argument that this difference between the duties imposed on school boards, *i.e.,* to indemnify in one case and to insure in the other, based on population, violates section 22 of article IV of the constitution. In *Latham* v. *Board of Education,* 31 Ill.2d 178, we said at page 182 that: "The controlling rule is well established that: 'Classification on the basis of population is not objectionable where there is reasonable basis therefore in view of the object and purposes to be accomplished by the legislation and such an act is not local or special merely because it operates in only one place, if that is where the conditions necessary to its operation exist.' [Citations.]" Again, in *Alexander* v. *City of Chicago,* 14 Ill.2d 261, we cited our holding in *Du Bois* v. *Gibbons,* 2 Ill.2d 392, 399, in which this court declared: " * * * a legislative classification based upon population will be sustained where founded on a rational difference of situation or condition existing in the persons or objects upon which it rests and there is a reasonable basis ·for the classification in view of the objects and purposes to be accomplished. * * *

There is always a presumption that the General Assembly and its committees acted conscientiously and did their duty in making a survey of the conditions prevailing in the municipalities of the State before enacting the classification legislation and the result will never be nullified by this court on the ground that its judgment might differ from that of the General Assembly. Only if it can be said that the classification is clearly unreasonable and palpably arbitrary will the courts act to hold the classifying enactment invalid."

In the *Latham* case we expressly upheld the validity of the legislative classification distinguishing between school districts with more than 500,000 inhabitants and those with less than 500,000. We took "judicial notice that the problems inherent in the supervision and management of a school system in a metropolitan area of 500,000 or more, and particularly, in the city of Chicago, are far more complex and may well require different modes of operation than a system in an average-size district  *  *  * . Whether or not the General Assembly has chosen the best method to accomplish an objective is a legislative and not a judicial question. *Fiedler* v. *Eckfeldt,* 335 Ill. 11, 31." 31 Ill.2d 178, 184.

The school district argues that section 10—21.6, providing that districts with a population of under 500,000 indemnify employees, is invalid as it has no "discernible relationship to the realities of life," referring to the holding of this court in *Harvey* v. *Clyde Park District,* 32 Ill.2d 60. *Harvey* is not germane, as there we struck down as arbitrary an attempt to immunize park districts by statute from certain tort liabilities, because other similar governmental entities had no such immunization. We said that the contradicting pattern of immunity and liability bore no relationship to the realities of life and was unreasonable. Here, we cannot say that the legislature's requiring that school districts with populations over 500,000 cover employees

through insurance and districts with lesser populations indemnify them is arbitrary and unreasonable. This court in *Gaca* v. *City of Chicago*, 411 Ill. 146, 154, said: "The question of classification, as we have said heretofore, is distinctly within the province of the legislature, and this has never been a judicial question except for the purpose of ascertaining whether the legislative action is clearly unreasonable."

We next consider the defendant school district's protest that section 10—21.6 is unconstitutional in that, it is argued, there is no rational basis for providing indemnity or insurance for school district employees while not so providing for other quasi-municipal corporation employees. Our court observed in *Illinois Association of Fire Fighters* v. *City of Waukegan*, 37 Ill.2d 423, at 425, that: "Statutes which make distinctions among public employees have frequently been sustained. Pensions for retired school teachers have been upheld against the challenge that they violated section 22 by providing to some employees an annuity not available to others. (*Krebs* v. *Board of Trustees of Teachers' Retirement System*, 410 Ill. 435, 441.) The Civil Service Act was sustained against the charge that it discriminated against laborers by excluding them from its provisions requiring charges and a hearing as a condition to discharge. (*People ex rel. Reilly* v. *City of Chicago*, 337 Ill. 100.) A statute fixing minimum wages for firemen is valid. *People ex rel. Mosheir* v. *City of Springfield*, 370 Ill. 541."

Again, it cannot be concluded that it is unreasonable for the legislature to deem that it is for the commonweal and the overall benefit of the public school system to provide protection from financial loss for school district employees through their employment. (*Cf. Krebs* v. *Trustees of Teachers' Retirement System*, 410 Ill. 435.) Nor can it be judged that it was unreasonable for the legislature to form the opinion that the need for protecting school dis-

trict employees was greater than other quasi-municipal employees. *Cf. Illinois Association of Fire Fighters* v. *City of Waukegan,* 37 Ill.2d 423.

We hold the classification here is not violative of section 22 of article IV.

Our constitution, through section 23 of article IV, declares the legislature powerless to release or extinguish the indebtedness, liability or obligation of a person to our State or any municipal corporation of Illinois. The defendant school district urges that section 10—21.6 contravenes this constitutional provision in that, according to its argument, it would extinguish the district's common-law implied right of indemnity against employees for damages the district might have been compelled to pay because of the negligence of such employees.

The argument is without merit. Even assuming the district's asserted right were to be considered under other circumstances an "indebtedness, liability or obligation" and within the constitutional provision, the effect of section 10—21.6 has been to prevent a debt or obligation from arising in favor of a school district because of its having incurred damages through an employee's negligence. Thus, there can be no debt or obligation to be released or extinguished. It appears clear that the legislature in enacting section 10—21.6, calling for the indemnification of a school employee, unmistakeably was eliminating any right a school district might have had to recover back from a negligent employee. The trial court here in denying the district's motion for leave to file its counterclaim must have deemed that to have allowed the counterclaim to be filed would have rendered section 10—21.6 nugatory. The legislative intent that school employees be indemnified is certainly repugnant to the district's thesis that it can recover back from the employee.

Finally, the defendant district contends that section 10—21.6 of the School Code requires school districts of

less than 500,000 population to become responsible for and pay the debt of an individual in violation of section 20 of article IV of our constitution. The school district submits that if it should have to satisfy a judgment given against its employee because of negligence which was in excess of $10,000, which is a school district's statutory limit of financial responsibility in each separate cause of action in which it may be found liable, the payment of the excess would constitute unconstitutional payment of its employee's debt. We find this contention invalid, for section 20 of article IV would not apply to payments under section 10—21.6. In *Krebs* v. *Board of Trustees,* 410 Ill. 435, at 443, this court, in considering a like argument made concerning the validity of paying retirement allowances to teachers, said: "Appellant contends that the sections of the statute here involved violate section 20 of article IV and section 2 of article II of the State constitution in that they give, loan or extend the credit of the State to these retired teachers, because the allowances will be used to pay their debts and liabilities and this is not a public debt. This contention is groundless. If the payment is legal, as we have heretofore found, it ceases to be public money in the hands of the recipients. If the payment is one which the State may legally make, the fact that, as incident to its execution, individuals are benefited is not sufficient to make the act a private act for private benefit, merely." The rationale of *Krebs* extends to this case.

We deem that the challenge by the defendant Bridewell to the constitutionality of section 825A of the School Code (Ill. Rev. Stat. 1965, chap. 122, par. 825A), which limits the recovery in each separate cause of action against a public school district to $10,000 is well founded. While this court has not specifically ruled on the validity of the restricting statute in question, our attitude toward arbitrarily formulated and restricting statutes of this type has been made clear by our expressions in *Harvey* v. *Clyde Park District,*

32 Ill.2d 60, and *Lorton v. Brown County Comunity Unit School District,* 35 Ill.2d 362.

Accordingly, having found section 10—21.6 of the School Code to be constitutional, we affirm the judgment of the Union County circuit court which denied the defendant school district's motion to file a counterclaim against the defendant Bridewell.

*Judgment affirmed.*